UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR No. 05-0133ML |
| | ) | |
| STAPHVON JOHNSON | ) | |

# DEFENDANT'S FIRST MOTION TO SUPPRESS

Now comes Staphvon Johnson, the Defendant in the above captioned matter, and moves this Honorable Court pursuant to Rule 41 of the Federal Rules of Criminal Procedure to suppress all evidence seized and statements taken from him, his person, his car, and his apartment after a traffic stop by the Providence Police on August 16, 2005. In particular the police stopped and arrested Mr. Johnson without probable cause or warrant. The police also seized Mr. Johnson's car and keys without probable cause or warrant. The police also questioned Mr. Johnson, after illegally arresting him, and elicited marginally incriminating statements from him. The police then used this illegally gathered information to obtain a search warrant for 93 Hudson Street, 3rd Floor, Providence, RI, from the RI State District Court. Ultimately search of that apartment produced the sawed off shotgun central to this matter. All of the evidence in this case, including the shotgun, flows from the initial illegal arrest of Mr. Johnson and therefore must be excluded by this Court as fruit of the poisonous tree. Mr. Johnson also submits the attached memorandum in support of this motion.

Respectfully Submitted
Staphvon Johnson,
By and through his counsel

Kevin J. Fitzgerald
Assistant Federal Defender

**Certification**

I hereby certify that I caused this motion to be delivered to AUSA Zechariah Chafee, 50 Kennedy Plaza, 8th Floor, Providence 02903 on this the 17th day of January, 2006.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **VS.** | ) | **CR No. 05-0133ML** |
| | ) | |
| **STAPHVON JOHNSON** | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S FIRST MOTION TO SUPPRESS**

I. Facts[1]

On August 16, 2005, the Providence Police arrested Mr. Johnson for possession of a sawed off shotgun at the end of an apparent investigation into cocaine trafficking. The police allege that they had been investigating Mr. Johnson for cocaine trafficking for approximately one month based on information from a confidential informant ("CI"). The CI told the police that Mr. Johnson was involved in trafficking cocaine and that he lived at 93 Hudson Street, 3rd Floor, Providence. Sporadic surveillance only appeared to confirm that Mr. Johnson lived at that address.

The CI provided specific information to police on August 16. The CI told the police that Mr. Johnson was in possession of a firearm with white grips while making cocaine deliveries in the Manton neighborhood of Providence.[2] Based on this information the police set up surveillance at 93 Hudson Street at 5:00 pm. At approximately 5:30 pm, Mr. Johnson left the multi-family house

---

[1]The facts are drawn from the following documents, attached:

1. Providence Police report by Officer Ludovici on August 16, 2005;
2. Narrative from Providence Police;
3. Statement of Officer Ludovici on August 16, 2005;
4. Statement of Officer Lawton on August 16, 2005;
5. Search warrant request affidavit by Officer Ludovici on August 16, 2005; and
6. Report of investigation from ATF SA Schiffer, submitted August 22, 2005.

[2]The search warrant application differs from the other reports, stating that the CI had seen Mr. Johnson in possession of the white gripped firearm at 91 Hudson Street, 3rd Floor, Providence, at approximately 5:00 pm.

at 93 Hudson with two other men and drove away in his car. The police followed him for about two blocks and then stopped him at the corner of Messer and Westminster Streets.

The police took Mr. Johnson and the others out of the car, searched them, and then searched the car. The police found no contraband on these three men or in the vehicle during the subsequent search incident to this arrest. The police seized Mr. Johnson's keys and his car. The police then took Mr. Johnson in an unmarked police car to a "pre-arranged location" for questioning. This location has not been disclosed by the Government. Officer Ludovici told Mr. Johnson his *Miranda* rights and then questioned him about cocaine trafficking and 93 Hudson St. Neither the exact content, nor the length, of the interrogation has been disclosed by the Government. According to Officer Ludovici, Mr. Johnson first denied living at 93 Hudson Street, then agreed he did live there. He also stated that nothing in the house was his and refused to grant the police permission to search the apartment.

After the interrogation, the police took Mr. Johnson and the other two men to the Providence Police station. Officer Ludovici drafted the warrant application at that time. In addition to requesting permission to search the apartment, the warrant also requested to search and seize Mr. Johnson's person. At 7:30 pm, RI District Court Chief Judge Derobbio signed the search warrant. At 7:40 pm, the police used the seized keys to enter the 3rd floor apartment at 93 Hudson Street. While the warrant targeted boilerplate drug trafficking material, the police did not find cocaine or a firearm with white grips (contrary to the CI's information). The search did turn up the sawed off shotgun at issue here and 15 shells. Later, but still on the 16th, Special Agent Schiffer, of the Bureau of Alcohol, Tobacco, and Firearms, questioned Mr. Johnson about the shotgun with Officer Ludovici. SA Schiffer did not give Mr. Johnson any *Miranda* warning. Officer Ludovici wrote in his statement that he gave Mr. Johnson a second *Miranda* warning prior to this interrogation. According to Agent Schiffer, Mr. Johnson admitted that he kept the shotgun for protection.

## II. Argument

The Court must suppress all evidence seized by the Providence Police in this case. The police stopped and arrested Mr. Johnson without probable cause or reasonable suspicion. The Fourth Amendment of the United States Constitution protects individuals from unreasonable governmental

searches and seizures. U.S. CONST. Amend. 4. A warrantless arrest without probable cause is *per se* unreasonable. *Cf. United States v. Robinson*, 414 U.S. 218, 224 (1973) (permitting search incident to *lawful* arrest); *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (defining probable cause necessary for lawful arrest). Evidence gained from an illegal arrest is fruit of the poisonous tree and thus must be excluded. *See Wong Sun v. United States*, 371 U.S. 471, 484-86 (1963) (discussing the exclusionary rule). Here, all of the evidence seized by the Providence Police, including that seized pursuant to the search warrant, is produce of the initial illegal arrest and therefore must be suppressed by the Court.

A. The Initial Stop and Arrest

The Providence Police stopped and arrested Mr. Johnson without probable cause or reasonable suspicion. Probable cause exists when, given the known information, a prudent person would conclude that the target individual had committed or was committing a criminal offense. *Beck,* 379 U.S. at 91; *United States v. Bizier*, 111 F.3d 214, 216-17 (1st Cir. 1997). Reasonable suspicion, a lower standard, exists when a police officer, based on specific and articulable facts, can conclude that some criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968) (authorizing brief investigatory stop and pat-down search for weapons only where specific articulable facts exist); *United States v. Nee*, 261 F.3d 79, 83 (1st Cir. 2001). According to the police reports, detectives stopped Mr. Johnson and his companions just after they left 93 Hudson Street. At that point the police had uncorroborated information from their informant that Mr. Johnson had been distributing cocaine in the Manton neighborhood while in possession of a gun earlier in the day, and that Mr. Johnson had just been at 91 Hudson Street with a gun. Without corroboration, this information does not rise to the level of probable cause or reasonable suspicion.

The information known by Officers Ludovici and Lawton at the time of the stop does not support reasonable suspicion. The Government needs to show that the situation justified the police actions, and that their actions were reasonable in scope considering the justification. *Nee*, 261 F.3d at 83 (1st Cir. 2001) (*citing Terry*, 392 U.S. at 19-20); *see also United States v. Chien*, 266 F.3d 1, 5-6 (1st Cir. 2001). At the time of the stop, the police had uncorroborated and nonspecific reports that Mr. Johnson was involved in cocaine distribution. They also had information that he was at 91

Hudson Street in possession of a gun. A very short time later the officers saw Mr. Johnson leave 93 Hudson Street. Combined, the information does not warrant the initial stop. The police do not witness any activity relating to drug trafficking, nor do they see anything which would lead to the suspicion Mr. Johnson possessed a weapon. Further, the officers do not even see Mr. Johnson at the address given by the informant. The police unreasonably concluded that criminal activity was perhaps afoot. Given the totality of the circumstances, the Court should find the stop illegal from the very beginning.

Recognizing that reasonable suspicion is a low standard, Mr. Johnson's arrest, which flowed from the stop, fails for lack of probable cause. Assuming the Court finds that the police had reasonable suspicions, those suspicions proved negative after the initial stop and search. The illegal stop and search did not produce any evidence of a crime, let alone any connection to cocaine trafficking or a white handled handgun. Without probable cause or warrant the police cannot arrest Mr. Johnson. And yet they did.

After the initial stop and search, the police took Mr. Johnson, handcuffed him and placed him into the police vehicle, and then spirited him off to an undisclosed location for interrogation. A disturbing thought considering the recent revelations regarding secret Government prisons for suspected terrorists. They also seized his car and his keys. At some point they gave Mr. Johnson his *Miranda* warnings. The Court cannot, however, ignore that the police had no facts or evidence at this point in time which implicated Mr. Johnson in any crime. Despite this deficiency, the police continued to hold and question Mr. Johnson. Mr. Johnson answered their questions, but, apparently, provided only marginally useful answers. The Government has only provided a couple of his answers, taken out of context, and has not disclosed the full content of the interrogation. Most importantly, none of his statements supported or corroborated the confidential informant's information, nor did they create any other probable cause implicating Mr. Johnson's involvement in a crime. Ultimately, Mr. Johnson refused to consent to a police search of the third floor apartment at 93 Hudson Street. The complete dearth of probable cause notwithstanding, the police then took Mr. Johnson to the Providence Police station.

The police continued to hold Mr. Johnson in custody while Officer Ludovici drafted the affidavit for the search warrant. The application requested permission to search the 3rd Floor

apartment of 93 Hudson Street, as well as the seizure and search of Mr. Johnson himself. Mr. Johnson was, of course, already under arrest and had already been searched without any warrant.

B. Search Warrant Affidavit Includes Illegally Obtained Evidence

Officer Ludovici drew up the proposed search warrant and wrote the affidavit. In addition to the uncorroborated and non-specific statements from the confidential informant, he included information resulting from Mr. Johnson's illegal arrest. As above, evidence gained from an illegal arrest is fruit of the poisonous tree and thus must be excluded. *See Wong Sun*, 371 U.S. at 484-86. The affidavit states that Mr. Johnson first professed to live on Branch Avenue. After Officer Ludovici allegedly informed Mr. Johnson of the ongoing investigation, the affidavit reports that he said he did live at 93 Hudson Street, but nothing at the address belonged to him. Lastly, Officer Ludovici states that Mr Johnson refused to consent to a search of the apartment, telling him to "get a warrant." The application failed to inform Judge DeRobbio that the police had Mr. Johnson in custody for two hours and had interrogated him at a secret location prior to applying for the warrant.

The Government will likely argue that the proper remedy is to excise the illegal portion of the affidavit and then determine if the warrant is still supported by probable cause. The First Circuit has used this technique in similar circumstances. *United States v. Ford*, 22 F.3d 374, 379 (1st Cir. 1994) (*citing United States v. Veillette*, 778 F.2d 899, 904 (1st Cir. 1985) (detectives included information in their affidavit from a warrantless, and arguably illegal, entry into Dr. Ford's home). That Court stated that the reviewing court should put aside the illegal evidence and then assess whether the warrant is proper. *Id.* The *Ford* case, however, was viewed in the context of inevitable discovery of evidence by the police and they did initially enter Dr. Ford's home legally to effect his arrest. *Id.* at 375-76. Here, unlike *Ford*, the police had no basis whatsoever to arrest and hold Mr. Johnson. Also, the illegally obtained information is so intertwined with the investigation that it poisons every aspect of the process. Taking the affidavit on its face, Officer Ludovici essentially applied for the warrant based on Mr. Johnson's goading. There is no indication that the police intended to seek a warrant until Mr. Johnson refused to grant consent. Simply excising that information from the affidavit does not sufficiently remedy the situation. The Court must strike down the entire warrant as the product of Mr. Johnson's illegal arrest.

C. ATF Interview Tainted by Illegal Arrest

After Mr. Johnson's arrest, the search of his apartment, and the discovery of the shotgun, Officer Ludovici and SA Schiffer questioned him at the Providence Police station. Agent Schiffer's report does not indicate that he gave Mr. Johnson his *Miranda* warnings before the questioning, while Officer Ludovici wrote in his report that he gave the warnings. Mr. Johnson avers that this interview also flowed from his illegal arrest.

The Court must decide if any attenuating circumstances exist sufficient to purge the taint from Mr. Johnson's admissions caused by his illegal arrest and search. *Oregon v. Elstad*, 470 U.S. 298, 305-06 (1985) (*citing Taylor v. Alabama*, 457 U.S. 687, 690 (1982); *see also Missouri v. Seibert*, 542 U.S. 600, 604-07 (2004) (post-illegality warnings do not necessarily purge taint).[3] Factors weighing those circumstances include the time lapse between the admission and the illegality, the change in location, the presence of the same officers at the illegal arrest and the interview, and also the use of *Miranda* warnings. *Elstad*, 470 U.S. at 310. While the questioning took place at the station instead of the undisclosed interrogation location or the apartment, it still took place close in time to the illegal arrest and was conducted, in part, by Officer Ludovici. Additionally, the interview would not have taken place but for Mr. Johnson's initial illegal arrest. Mr. Johnson's statements were the produce of the illegal arrest and subsequent searches. The Court must therefore suppress those statements.

III. Conclusion

The Providence Police violated Mr. Johnson's Fourth Amendment rights by stopping, arresting, and searching him without probable cause or reasonable suspicion. All of the evidence obtained in this matter, including that obtained through the execution of the search warrant, flowed from the initial illegal stop. As fruit of that poisonous tree, the evidence must be excluded. The Government cannot credibly or reasonable argue that the police acted appropriately in this situation. Likewise, the Court should not condone this outrageous police behavior. The police clearly

[3]The Supreme Court struck down the Police practice of intentionally eliciting an unwarned confession and then giving warnings and eliciting a second confession; use of *Miranda* in that situation did not attenuate the taint from the initial statement. *Seibert*, 542 U.S. at 604-07.

overstepped their authority here and this Court must grant Mr. Johnson's motion.

Respectfully Submitted
Staphvon Johnson,
By and through his counsel

Kevin J. Fitzgerald
Assistant Federal Defender

**Certification**

I hereby certify that I caused this motion to be delivered to AUSA Zechariah Chafee, 50 Kennedy Plaza, 8th Floor, Providence 02903 on this the 17th day of January, 2006.