**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **VS.** | ) | **CR No. 05-0133ML** |
| | ) | |
| **STAPHVON JOHNSON** | ) | |

---

**DEFENDANT'S SECOND MOTION TO SUPPRESS**

Now comes Staphvon Johnson, the Defendant in the above captioned matter, and moves this Honorable Court pursuant to Rule 41 of the Federal Rules of Criminal Procedure to suppress all evidence seized and statements taken from him flowing from the search of his apartment at 93 Hudson Street, 3rd Floor, by the Providence Police on August 16, 2005. In particular the police seized a short barreled shotgun and shells, and later questioned Mr. Johnson eliciting incriminating statements. The Police conducted the search pursuant to search warrant issued by RI District Court Chief Judge Albert DeRobbio. As grounds thereto, Mr. Johnson states that the warrant was invalid because it recklessly or intentionally contained illegally obtained information and lacked probable cause. The evidence flowing from the execution of the invalid warrant is therefore fruit of the poisonous tree and must be excluded by this Court. Mr. Johnson also submits the attached memorandum in support of this motion.

Respectfully Submitted
Staphvon Johnson,
By and through his counsel

Kevin J. Fitzgerald
Assistant Federal Defender

**Certification**

I hereby certify that I caused this motion to be delivered to AUSA Zechariah Chafee, 50 Kennedy Plaza, 8th Floor, Providence 02903 on this the 14th day of January 2006.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

FILED
JAN 18 2006
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR No. 05-0133ML |
| | ) | |
| STAPHVON JOHNSON | ) | |

---

**MEMORANDUM IN SUPPORT OF DEFENDANT'S SECOND MOTION TO SUPPRESS**

I. Facts[1]

On August 16, 2005, the Providence Police arrested Mr. Johnson for possession of a sawed off shotgun at the end of an apparent investigation into cocaine trafficking. The police allege that they had been investigating Mr. Johnson for cocaine trafficking for approximately one month based on information from a confidential informant ("CI"). The CI told the police that Mr. Johnson was involved in trafficking cocaine and that he lived at 93 Hudson Street, 3rd Floor, Providence. Sporadic surveillance only appeared to confirm that Mr. Johnson lived at that address.

The CI provided specific information to police on August 16. The CI told the police that Mr. Johnson was in possession of a firearm with white grips while making cocaine deliveries in the Manton neighborhood of Providence.[2] Based on this information the police set up surveillance at 93 Hudson Street at 5:00 pm. At approximately 5:30 pm, Mr. Johnson left the multi-family house

---

[1]The facts are drawn from the following documents, attached:
1. Providence Police report by Officer Ludovici on August 16, 2005;
2. Narrative from Providence Police;
3. Statement of Officer Ludovici on August 16, 2005;
4. Statement of Officer Lawton on August 16, 2005;
5. Search warrant request affidavit by Officer Ludovici on August 16, 2005; and
6. Report of investigation from ATF SA Schiffer, submitted August 22, 2005.

[2]The search warrant application differs from the other reports, stating that the CI had seen Mr. Johnson in possession of the white gripped firearm at 91 Hudson Street, 3rd Floor, Providence, at approximately 5:00 pm.

at 93 Hudson with two other men and drove away in his car. The police followed him for about two blocks and then stopped him at the corner of Messer and Westminster Streets.

The police took Mr. Johnson and the others out of the car, searched them, and then searched the car. The police found no contraband on these three men or in the vehicle during the subsequent search incident to this arrest. The police seized Mr. Johnson's keys and his car. The police then took Mr. Johnson in an unmarked police car to a "pre-arranged location" for questioning. This location has not been disclosed by the Government. Officer Ludovici told Mr. Johnson his *Miranda* rights and then questioned him about cocaine trafficking and 93 Hudson St. Neither the exact content, nor the length, of the interrogation has been disclosed by the Government. According to Officer Ludovici, Mr. Johnson first denied living at 93 Hudson Street, then agreed he did live there. He also stated that nothing in the house was his and refused to grant the police permission to search the apartment.

After the interrogation, the police took Mr. Johnson and the other two men to the Providence Police station. Officer Ludovici drafted the warrant application at that time. In addition to requesting permission to search the apartment, the warrant also requested to search and seize Mr. Johnson's person. At 7:30 pm, RI District Court Chief Judge Derobbio signed the search warrant. At 7:40 pm, the police used the seized keys to enter the 3rd floor apartment at 93 Hudson Street. While the warrant targeted boilerplate drug trafficking material, the police did not find cocaine or a firearm with white grips (contrary to the CI's information). The search did turn up the sawed off shotgun at issue here and 15 shells. Later, but still on the 16th, Special Agent Schiffer, of the Bureau of Alcohol, Tobacco, and Firearms, questioned Mr. Johnson about the shotgun with Officer Ludovici. SA Schiffer did not give Mr. Johnson any *Miranda* warning. Officer Ludovici wrote in his statement that he gave Mr. Johnson a second *Miranda* warning prior to this interrogation. According to Agent Schiffer, Mr. Johnson admitted that he kept the shotgun for protection.

## II. Argument

### A. Search Warrant Affidavit Includes Illegally Obtained Evidence

Officer Ludovici drew up the proposed search warrant and wrote the affidavit. In addition

to the uncorroborated and non-specific statements from the confidential informant, he included information resulting from Mr. Johnson's illegal arrest. Evidence gained from an illegal arrest is fruit of the poisonous tree and thus must be excluded. *See Wong Sun v. United States*, 371 U.S. 471, 484-86 (1963). The affidavit states that Mr. Johnson first professed to live on Branch Avenue. After Officer Ludovici allegedly informed Mr. Johnson of the ongoing investigation, the affidavit reports that he said he did live at 93 Hudson Street, but nothing at the address belonged to him. Lastly, Officer Ludovici states that Mr Johnson refused to consent to a search of the apartment, telling him to "get a warrant." The application failed to inform Judge DeRobbio that the police had Mr. Johnson in custody for two hours and had interrogated him at a secret location prior to applying for the warrant.

The Government will likely argue that the proper remedy is to excise the illegal portion of the affidavit and then determine if the warrant is still supported by probable cause. The First Circuit has used this technique in similar circumstances. *United States v. Ford*, 22 F.3d 374, 379 (1st Cir. 1994) (*citing United States v. Veillette*, 778 F.2d 899, 904 (1st Cir. 1985) (detectives included information in their affidavit from a warrantless, and arguably illegal, entry into Dr. Ford's home). That Court stated that the reviewing court should put aside the illegal evidence and then assess whether the warrant is proper. *Id.* The *Ford* case, however, was viewed in the context of inevitable discovery of evidence by the police, and they did initially enter Dr. Ford's home legally to effect his arrest. *Id.* at 375-76. Here, unlike *Ford*, the police had no basis whatsoever to arrest and hold Mr. Johnson. Also, the illegally obtained information is so intertwined with the investigation that it poisons every aspect of the process. Taking the affidavit on its face, Officer Ludovici essentially applied for the warrant based on Mr. Johnson's goading. There is no indication that the police intended to seek a warrant until Mr. Johnson refused to grant consent. Simply excising that information from the affidavit does not sufficiently remedy the situation. The Court must strike down the entire warrant as the product of Mr. Johnson's illegal arrest.

B. Search Warrant Affidavit Lacks Probable Cause

If the Court does not accept the above argument and, in the alternative, excises the ill gotten parts of the affidavit, the warrant still fails for want of probable cause. The affidavit, in a bare bones

fashion, reiterates the confidential informant's statements. The informant told police that Mr. Johnson was a large scale cocaine trafficker who stored large amounts of cocaine at 93 Hudson Street, 3rd Floor, Providence. He also alleged that he had been inside the apartment within the past few days and seen cocaine. Finally, the informant stated that at approximately 5:00 pm, August 16, 2005, he was with Mr. Johnson at 91 Hudson Street and that Mr. Johnson had a white handled gun. The only fact corroborated by the police, through sporadic surveillance, was that Mr. Johnson lived at 93 Hudson Street.

Without further corroboration, the affidavit fails to establish probable cause. Also, the affidavit must show some nexus between a suspected crime and the place to be searched; probable cause that evidence of the particular crime will be found at the particular location. *See United States v. Feliz*, 182 F.3d 82, 86 (1st Cir. 1999); *see also United States v. Zayas-Diaz*, 95 F.3d 105, 111 (1st Cir. 1996). Here, the affidavit does not make that link with sufficient strength. While it states that the informant saw cocaine in the apartment, the affidavit avoids the fact that, contrary to the CI, Mr. Johnson had no cocaine or gun in his possession when arrested. The affidavit also lacks any detail about the informant's visit to the apartment. The police did not conduct any type of controlled purchase from Mr. Johnson at the apartment and never surveilled the informant visiting the apartment. The affidavit is woefully devoid of corroborated facts. Additionally, because the police did in fact execute the flawed search warrant, the Court knows that the police never found any cocaine or a white handled handgun.

The Court may construe this motion as a request for a *Franks* hearing. Mr. Johnson would welcome such a hearing if deemed necessary by the Court. A party can attack the issuance of a search warrant upon a showing of intentional misrepresentation or recklessness in the preparation of the affidavit for the court. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). The facts before this Court do not precisely fit the situation discussed in Franks, but the warrant was based on illegal evidence. Also, the police could not turn a blind eye to the illegal evidence and execute the warrant in good faith because Officer Ludovici conducted the illegal arrest, search, and questioning, and also wrote the affidavit for the warrant. *See United States v. Leon*, 468 U.S. 897, 922 (1984) (establishing a good faith exception to *Franks*). Clearly, the police did exhibit a high level of recklessness in the process of this investigation and execution of the search warrant. That

recklessness establishes any initial showing necessary to attack this search warrant.

C. ATF Interview Tainted by Illegal Arrest

After the execution of the search warrant and the discovery of the shotgun, Officer Ludovici and SA Schiffer questioned Mr. Johnson at the Providence Police station. SA Schiffer's report does not indicate that he gave Mr. Johnson his *Miranda* warnings before the questioning, while Officer Ludovici wrote in his report that he gave the warnings. Mr. Johnson avers that this interview also flowed from the invalid search warrant.

The Court must decide if any attenuating circumstances exist sufficient to purge the taint from Mr. Johnson's admissions caused by this illegal search. *Oregon v. Elstad*, 470 U.S. 298, 305-06 (1985) (*citing Taylor v. Alabama*, 457 U.S. 687, 690 (1982); *see also Missouri v. Seibert*, 542 U.S. 600, 604-07 (2004) (post-illegality warnings do not necessarily purge taint).[3] Factors weighing those circumstances include the time lapse between the admission and the illegality, the change in location, the presence of the same officers at the illegal arrest and the interview, and also the use of *Miranda* warnings. *Elstad*, 470 U.S. at 310. While the questioning took place at the station instead of the undisclosed interrogation location or the apartment, it still took place close in time to the search and was conducted, in part, by Officer Ludovici. Additionally, the interview would not have taken place but for the execution of the invalid warrant. Mr. Johnson's statements were the product of the illegal search. The Court must therefore suppress those statements.

III. Conclusion

The Court must suppress the evidence obtained by the Providence Police pursuant to the execution of the invalid search warrant herein. The police secured the warrant through the use of illegally obtained information, and did so recklessly. Also, the warrant is not supported by probable cause and lacks the necessary nexus between any crime and 93 Hudson Street, 3rd Floor, Providence, RI. For all of these reasons the Court should suppress all of the fruits of this invalid search warrant

---

[3]The Supreme Court struck down the Police practice of intentionally eliciting an unwarned confession and then giving warnings and eliciting a second confession; use of *Miranda* in that situation did not attenuate the taint from the initial statement. *Seibert*, 542 U.S. at 604-07.

including the shotgun and shells, and the subsequent statements taken by police.

Respectfully Submitted
Staphvon Johnson,
By and through his counsel

Kevin J. Fitzgerald
Assistant Federal Defender

**Certification**

I hereby certify that I caused this motion to be delivered to AUSA Zechariah Chafee, 50 Kennedy Plaza, 8th Floor, Providence 02903 on this the 17th day of January, 2006.